**UNITED STATES of America, Plaintiff,**

v.

**Lucille E. WALLACE and Mary M. Gilligan, Defendants.**

Civ. A. No. 79–175–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

July 8, 1980.

John F. Kane, Asst. U.S. Atty., Norfolk, Va., for plaintiff.

Philip R. Farthing, Norfolk, Va., for Lucille Wallace.

No appearance made by or for Mary Gilligan.

## MEMORANDUM ORDER

CLARKE, District Judge.

This matter involves an action in interpleader, instituted by the United States to resolve conflicting claims of entitlement to a policy of National Service Life Insurance. Pursuant to 28 U.S.C. § 636(c)(4), Lucille Wallace appeals the United States Magistrate's November 27, 1979, decision awarding the policy proceeds to Mary Gilligan.

### I.

*Background*

In 1943 Eugene R. Wallace, then a member of the United States Navy, purchased an $8500.00 policy of National Service Life Insurance (hereinafter referred to as "NSLI"), designating his wife, Mary Wallace (now Mary Gilligan, one of the claimants before us) as the primary beneficiary of the policy. As the named insured, Mr. Wallace had the right to change the beneficiary of his NSLI policy at any time, "subject to regulations." 38 U.S.C. § 717. Such regulations, in turn, confirmed Wallace's authority to change his beneficiary as he pleased, so long as the change "be made by notice in writing signed by the insured and forwarded to the Veterans Administration. . . . " 38 C.F.R. § 8.47.

The insured's marriage to wife Mary ended in divorce in 1953. Wallace then remarried in 1955, this time to Lucille Wallace

(the appellant in this case). Notwithstanding the change in Mr. Wallace's personal affairs, however, he evidently failed to take any formal action to change the beneficiary of his NSLI policy. The record is uncontradicted that at no time during the remainder of his life did Mr. Wallace write the Veterans Administration to request a change in the beneficiary of his NSLI policy from his first wife to his second wife. Thus, at the time of the insured's death in 1976, Mary Gilligan, rather than Lucille Wallace, was the designated beneficiary of the $8500.00 in policy proceeds.

Subsequently, a contest developed over the right to receive the NSLI proceeds. Following inconclusive administrative proceedings, the United States filed a Complaint in interpleader under 38 U.S.C. § 784(a), seeking a judicial determination as to whether Mrs. Gilligan or Mrs. Wallace was entitled to the NSLI proceeds. Upon the consent of the parties, the Magistrate tried the case, without a jury, on November 8, 1979.

In his decision awarding the contested proceeds to Mrs. Gilligan, the Magistrate found ample evidence in the record that the insured had intended for Mrs. Wallace to enjoy the insurance proceeds. The Magistrate concluded, however, that Mr. Wallace had undertaken no "plain and demonstrative overt act which the decedent might reasonably believe to have the effect of changing the beneficiary of the policy." Therefore, the Magistrate determined that Mrs. Gilligan, as the designated beneficiary under the terms of the NSLI policy, should receive the proceeds in question. From this adverse decision, Mrs. Wallace takes her appeal.

## II.

### Discussion

Mrs. Wallace principally takes issue with the Magistrate's conclusion that the insured took no overt action to ensure that his NSLI proceeds would go to his second wife when he died. Citing *Walker v. United States*, 493 F.2d 700 (4th Cir. 1973) as her authority, Mrs. Wallace maintains that

there is ample evidence that her husband undertook several overt acts consistent with his desire to leave the insurance money to Lucille Wallace.

Undeniably, *Walker* is a case similar in several respects to the instant matter. In *Walker* a serviceman (George Walker) purchased two NSLI policies some twenty years before his death, and named his first wife as the principal beneficiary. When the serviceman divorced his first wife and remarried, however, he failed to change the beneficiary of his policies. Therefore, when the insured died in combat, his first and second wives entered claims for the $10,000 in proceeds to be collected from the NSLI policies.

In concluding that the second wife should receive the proceeds, the Fourth Circuit Court of Appeals found it "quite apparent" that the insured had desired for the latter spouse to enjoy the NSLI benefits, notwithstanding his failure to write the Veterans Administration to make the change. *Id.* at 703. The Fourth Circuit also determined that the insured had made an "overt act" representative of his intention to leave the $10,000 to his second wife. Just before his death, the serviceman had given his wife a general power of attorney and had designated her as the recipient of his pay and other allowances in the event of his demise on a "Record of Emergency Data" form filed with the Government. *Id.*

Mrs. Wallace claims that applying the rationale of *Walker* to the facts developed in this case, the present matter should be resolved with a finding in her favor. Mrs. Wallace correctly argues that the evidence of her husband's desire to leave the NSLI proceeds to her is substantial: at trial, Mrs. Wallace, various neighbors and a Portsmouth Naval Hospital disability counselor (Charles Swinney) testified without contradiction that the insured intended for his wife to be the recipient of all of his insurance proceeds, and took great pride in the fact that his wife would be well cared for when he died. Further, Mrs. Wallace contends that her husband undertook certain

actions consistent with his desire to leave the NSLI proceeds to her. Like the serviceman in *Walker*, Mrs. Wallace maintains, her husband gave her powers of attorney on three separate occasions while he was in the service, and named her as the beneficiary of his pay on the "Record of Emergency Data" form he completed before serving in Vietnam. Then too, Mrs. Wallace points out that her husband designated her as his beneficiary in his Navy retirement papers and made a will leaving his entire estate to her. In short, Mrs. Wallace insists in this appeal that *Walker* requires the reversal of the Magistrate's decision.

Carefully examining all the evidence in the record, however, we conclude that the Magistrate quite properly distinguished the *Walker* case from the instant litigation. Indeed, we find *Walker* distinguishable from the present case in at least three important respects. First, the evidence of the insured's intent, undisputed in *Walker*, is in conflict in this case. During the administrative proceedings, Mrs. Gilligan offered evidence, corroborated by her mother, that Eugene Wallace agreed to maintain an insurance policy for her benefit if she would let him have the custody of their son. It is uncontradicted, moreover, that the Wallace son lived with his father for a time following his parents' divorce, while the three daughters lived with their mother.

Second, the serviceman in *Walker* met his death, without warning, in fighting in Vietnam. The insured in this case, to the contrary, learned that he was dying of cancer several months prior to his death, and thus had time to put his affairs in order.

Third, and most importantly, in *Walker* the evidence suggested that the insured believed that his NSLI beneficiary automatically changed with his divorce. Such was not the case in the instant lawsuit. Indeed, Mr. Wallace had another policy of life insurance with the Veterans Administration in addition to the NSLI policy in question, and changed the beneficiary of the United States Government Life Insurance (USGLI) policy, following his divorce, from Mary Gilligan to Lucille Wallace. Additionally, to effect the beneficiary change, Wallace wrote Veterans Administration, effectively complying with the same procedures that he should have followed to leave the NSLI proceeds to his second wife.

Not only do these differences undercut the force of Mrs. Wallace's argument that *Walker* should control our decision-making, but they also convince us that the Magistrate correctly decided this case in Mary Gilligan's favor. We agree with the Magistrate's conclusion that there is no evidence of overt acts unequivocally reflecting Eugene Wallace's intention to leave the NSLI proceeds to his second wife. Nowhere is it claimed that Wallace ever believed he was changing his NSLI beneficiary by granting powers of attorney (subsequently abrogated), or by making a will or filling out Navy records. To the contrary, Mr. Wallace knew well the procedures to be followed to change his NSLI policy beneficiary, and understood, too, that the mere fact of his divorce did not preclude Mary Gilligan from claiming the policy proceeds as the designated beneficiary. Then too, there is no indication from the record that Wallace believed he was changing his NSLI beneficiary when he wrote the Veterans Administration to change his USGLI beneficiary. In sum, then, Wallace undertook no actions manifesting his intention to make Mrs. Wallace the beneficiary of the NSLI policy in dispute in this case. Consequently, the NSLI proceeds must go to Mary Gilligan, in conformity with the Magistrate's decision.

In affirming the Magistrate's decision, we are not unmindful of the seeming equities in this case. Eugene Wallace apparently did not even see his first wife during the last twenty-two years of his life because of his dislike for her. In these interpleader proceedings, moreover, Mrs. Wallace actively pursued her claim of entitlement to the NSLI proceeds, employing counsel to marshal most of the evidence introduced into the record of this litigation. Mrs. Gilligan, on the other hand, submitted only a brief note contesting Mrs. Wallace's claim as her contribution to the record, and made no appearance by counsel or otherwise. Under

such circumstances, giving the proceeds to Mrs. Wallace would reward the more diligent, and, in some respects, the more deserving claimant.

Yet, at the same time, we must resist "the idea of brushing aside legal technicalities in order to do substantial justice." *Walker v. United States, supra,* at 702, instructed by the Fourth Circuit to resist a rule of "subjective intent." *Id.* As the Fourth Circuit has recognized:

> To adopt a pure-intention rule might delay payment in innumerable cases and might well result in the cumbersome procedure of interpleader with the Government depositing the money in a fund for disbursement by the administrative judge or the district court after an evidentiary hearing as to the intention of the deceased soldier.

*Id.* Consequently, absent evidence of overt acts reflecting the insured's clear intent, evidence which we have concluded is missing here, we feel compelled to honor the beneficiary designation as contained in the NSLI policy itself.

### III.

#### Conclusion

We affirm the Magistrate's decision awarding some $8500.00 in NSLI proceeds to Mary Gilligan. Specifically, we find that the Magistrate properly concluded that Eugene Wallace had not taken any overt steps to change his policy beneficiary from Mrs. Gilligan to his second wife, Lucille Wallace. Given the conflicting evidence of the insured's intention with respect to the proceeds, his obvious familiarity with the procedures for formally changing NSLI beneficiaries, and the ample time that he had to effect a change of beneficiary before he died. Nothing in the record before us suggests that Mr. Wallace ever took any action reflecting his desire to make Mrs. Wallace the recipient of the NSLI proceeds in question.

As a result, the Magistrate's November 27, 1979, decision is AFFIRMED. Consistent with the Magistrate's Order, the United States is DIRECTED to pay Mary M. Gilligan the proceeds of NSLI policy number V–1631–77–20. Conversely, Lucille Wallace's appeal is DENIED.